LEAR (JONES v.). See Case No. 7,476.

LEAR (WAGER v.). See Case No. 17,034.

LEARNED v. BURLINGTON. See Case No. 14,687.

LEARNED (UNITED STATES v.). See Case No. 15,580.

## Case No. 8,161a.

### LEARS et al. v. ONE CASK OIL.

[2 Betts, D. C. MS. 94.]

District Court, S. D. New York. Jan. 6, 1842.

FINDING LOST GOODS—CONCEALMENT — PROOF OF OWNERSHIP—CLAIM—RIGHT TO SALVAGE.

[1. Evidence that libellant's whaling vessel was recently wrecked in the vicinity where a cask of oil was picked up at sea; that similar casks of oil were picked up and delivered to libellant; and that the currents were such as to drift casks in that direction from the wreck is sufficient prima facie proof of ownership as against the finder who conceals it.]

[2. Where a master conceals a cask of oil which he has picked up at sea and sells it at a secret sale after claim of ownership is made, he is not entitled to salvage compensation, or to be refunded duties paid by him.]

[This was a libel in rem and in personam by Prince Sears and others against one cask of oil and Samuel Banker.]

D. Lord, for libellants.
Mr. Campbell, for claimant.

BETTS, District Judge. The libel seeks to recover the value of a cask of spermacetta oil, picked up at sea by the claimant. The process was in rem and in personam and was only served upon the defendant, the

oil not being attached. The claimant is master of the British ship Sir Lionel Smith, and after taking on board a pilot about the middle of May, and within 40 miles of this port, they fell in with the cask of oil in question floating at sea, secured it, and brought it to this port. The master entered it at the custom house as found at sea, and paid duties on it. He was informed by the pilot when the cask was first discovered, and after it was secured, that the whaling ship Forrester had been recently wrecked about the 20th of April, on the S. E. side of Long Island, and that similar casks of oil had been picked up by his boat and delivered to Grinnell, Minturn & Co., in New York, the agents of the owners of the Forrester. The pilot further stated that the courses of the currents were such as to drift casks in the direction from the wreck this one was found. On the arrival of the Sir Lionel Smith here, demand was made on board her by Grinnell, Minturn & Co. in behalf of the owners of the Forrester to deliver to them the cask of oil, proffering to the master indemnity against all other claims, and a reasonable reward for his services. The claimant declined delivering it up, on the allegation that the ownership was not proved to him, and subsequently, when repeatedly called upon refused to allow the cask to be seen and examined, with a view to identifying it or ascertain the quantity of oil and removed it from the vessel and placed it for sale in the hands of an agent of his own.

Although the proof is not very direct or full to the fact that this cask was one of the cargo of the Forrester, yet the circumstances all conduce strongly to that conclusion and would well warrant a jury in the absence of all other evidence in so finding it. A court of admiralty ascertains and adjudges facts upon the same principles that obtain with juries, and I shall accordingly hold that the evidence is sufficient to establish prima facie the ownership of this property in the libellants. The course of the claimant in respect to it was most unjustifiable and inequitable. If his motive had been to exonerate himself from responsibility, he would have deposited the property in the public stores, with his consignee and the consul of his country, and caused public notice to be given of the fact and of the finding. On the contrary, he studiously concealed and abstracted the property from all public observation or examination and evinced a purpose to appropriate it to himself, offering it at private sale, &c. He did not even advertise it in any paper, until proceedings were on foot to commence this action and as he was on the eve of sailing from the port, and does not now surrender the property to be sold for the benefit of whomsoever may show title to it, but interferes and claims it now as having a better right to it than the libellants. Whilst the court would be most ready to protect and remunerate the claimant in his agency in this matter if he had manifested a disposition to discharge fairly the trusts of a casual bailee, yet it will in no way countenance an effort to make his own, the property of others, which came into his possession under circumstances calculated to inspire the deepest anxiety with every upright mariner to effect its restoration to those from whom it was taken by the disasters of the sea. I think the studious efforts of the claimant to conceal this oil and effect a secret sale of it, knowing the claim of property by the libellants, deprives him of all title to compensation for his services in rescuing it and bringing it in, and for the duties he gratuitously and unnecessarily paid on its entry, and also most justly exposes him to the payment of the costs the libellants have incurred in recovering their property.

I shall accordingly decree that the libellants recover $85/100$ per gallon, the value of the oil at the time it was brought in, and costs of suit to be taxed. The quantity of oil is to be regarded as 168 gallons, but if the claimant desires it, the cask may be gauged at his own expense; and the quantity returned be received as the true amount on which the computation is to be made.